**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OLLNOVA TECHNOLOGIES LTD., *Plaintiff*, v. ECOBEE TECHNOLOGIES ULC d/b/a ECOBEE, *Defendant*. | Case No. 2:22-cv-00072-JRG  The Honorable J. Rodney Gilstrap |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL, REGARDING INVALIDITY UNDER 35 U.S.C. § 101 OF THE ASSERTED CLAIMS OF U.S. PATENT NO. 7,860,495**

# TABLE OF CONTENTS

I.  Introduction ........................................................................................................................ 1

II. Statement of Facts ............................................................................................................. 2

   A.  The Asserted Claims of the '495 Patent ................................................................ 2

   B.  The '495 Patent Concedes That the Use of Multi-Tier Wireless Networks
       and Sensors to Control Building Components Was Known .................................. 2

   C.  The Court's Decision on Subject Matter Eligibility ............................................... 4

   D.  The Evidence and Erroneous Instructions at Trial ................................................. 4

       1.  ecobee's Expert Substantiated His Opinions that the Non-Abstract
           Elements of the Claims of the '495 Patent Were Conventional .................. 4

       2.  Ollnova's Rebuttal Expert Testimony Improperly Relied on the
           Abstract Idea Itself ....................................................................................... 5

       3.  The Jury Instructions and Verdict Form Did Not Identify the
           Abstract Idea or Advise the Jury That Any Unconventional
           Elements Must Be Distinct from the Abstract Idea ..................................... 6

III. Argument ........................................................................................................................... 7

   A.  Uncontroverted Evidence Established that the Asserted Claims—Without
       the Abstract Idea—Contain No Inventive Concept and Fail *Alice* Step Two ......... 7

   B.  The Jury Did Not Decide the Only Relevant Question ........................................ 10

IV. Conclusion ....................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*BSG Tech LLC v. BuySeasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) .................................................................................. 8, 10, 11

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ............................................................................................ 9, 10

*Credit Acc. Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) .................................................................................................. 8

*Elec. Power Grp., LLC v. Alstom, S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .................................................................................................. 8

*Ficep Corp. v. Peddinghaus Corp.*,
    No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023) ........................................... 8

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) .................................................................................................. 9

*Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*,
    No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024) ................................................. 10

*PerkinElmer, Inc. v. Intema Ltd.*,
    496 F. App'x 65 (Fed. Cir. 2012) ............................................................................................. 8

*Repifi Vendor Log. v. IntelliCentrics, Inc.*,
    No. 21-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) ................................................. 8

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .................................................................................................. 8

*Smart Sys. Inn., LLC v. Chicago Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017) ................................................................................................ 10

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ................................................................................................... 9

**Statutes**

35 U.S.C. § 101 .............................................................................................................. 1, 2, 8, 11

**Rules**

Fed. R. Civ. P. 50(b) ................................................................................................................... 2

Fed. R. Civ. P. 59 ........................................................................................................................ 2

I.       **INTRODUCTION**

The Court should grant judgment as a matter of law (JMOL) that asserted claims 1 and 2 of U.S. Patent No. 7,860,495 ("the '495 patent") are ineligible under 35 U.S.C. § 101. Pretrial, the Court found that representative claim 1 failed *Alice* step one as being "directed to the abstract idea of 'controlling generic 'components' using information from two separate sources (i.e., information from two separate networks).'" Dkt. 63 at 16. At the same time, the Court found that there was a triable issue on *Alice* step two as to whether the use of "different wireless networks utilizing different wireless communications protocols" was unconventional. *Id.* at 17-18.

*Alice* step two was submitted to the jury, which found that ecobee had not proven ineligibility.[1] Dkt. 225 at 5. However, there was no evidentiary basis for a reasonable jury to reach this conclusion. To address the triable issue of fact, ecobee presented ***unrebutted*** expert testimony that the '495 patent claims contain no inventive concept because the use of "different wireless networks utilizing different wireless communications protocols" was well known and conventional. Ollnova's expert never contradicted this testimony, and instead skirted the issue by offering that the claims' use of a "two wireless network architecture to control building equipment" was unconventional. Ex. 1 [Trial Tr.] at 1074:4-15. But, that is the exact concept the Court previously found to be abstract under *Alice* step one. Thus, even if the jury fully credited Ollnova's expert's testimony, it must still lead to a decision of ineligibility as the Federal Circuit has made clear that ***an abstract idea cannot supply the inventive concept***. Notably, this problem was compounded because neither the jury instructions nor the verdict form informed the jury of the abstract idea or the requirement that the abstract idea must be different from the inventive concept.

---

[1] Specifically, the jury found that ecobee had not proven "that the limitations of the asserted claims of the '495 Patent, when taken individually or when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of April 9, 2004." Dkt. 225 at 5.

1

Pursuant to Fed. R. Civ. P. 50(b), the asserted claims are invalid under § 101 as a matter of law. At a minimum, pursuant to Fed. R. Civ. P. 59, a new trial is needed because the jury never decided whether the claims—without the abstract idea—involved conventional technology.

## II.     STATEMENT OF FACTS

### A.     The Asserted Claims of the '495 Patent

The asserted claims of the '495 patent relate to controlling building components with data from a multi-tier wireless network. Asserted claim 1 of the '495 patent recites a "control system for wireless building automation control" comprising:

> [1] a first wireless network in a building having first wireless communications protocol; and
>
> [2] a second wireless network in the building having a second wireless communications protocol, the first wireless communications protocol different than the second wireless communications protocol;
>
> [3] wherein the first wireless network is operable to control, free of communications with the second wireless network, building components in response to sensors operable within the first wireless network, and wherein the first wireless network is also operable to control the building components in response to data from the second wireless network.

Ex. 2 ['495 patent] at 19:20-35 (numbering added).

Asserted claim 2 depends from claim 1 and adds that "the first wireless communications protocol has a first bandwidth and the second wireless communications protocol has a second bandwidth, the first bandwidth less than the second bandwidth." *Id.* at 19:36-39.

### B.     The '495 Patent Concedes That the Use of Multi-Tier Wireless Networks and Sensors to Control Building Components Was Known

The specification of the '495 patent discusses, as background to the invention, that "wireless architectures for building automation systems have been proposed," including "a multi-tier wireless network [that] emulates current wired building automation systems." Ex. 2 ['495 patent] at 1:53-58. The patent further admits that the claimed different wireless networks utilizing different wireless communications protocols, such as "Bluetooth" and "wifi," were known:

> Each network operates pursuant to different wireless communications protocols. For example, the lower level network 14 operates pursuant to the 802.15.4 communications protocols, but **Bluetooth**, proprietary, standard, ***now known*** or later developed wireless communication protocols may be used. The high level network 14 operates pursuant to the 802.11x protocol (e.g., 802.11a 802.11b, 802.11c . . . 802.11g), but ***wifi***, computer network, Ethernet, proprietary, standard, ***now known*** or later developed protocols may be used. 802.15.4 and 802.11x provide medium access control and a physical interface to wireless medium. ***Any now known*** or later developed ***network and transport algorithms may be used***. Communication, transport and routing algorithms are provided on the appropriate devices. Any packet size or data format may be used. . . .

*Id.* at 5:8-30 (emphases added).

The '495 patent does not purport to invent these known networks or using them together. Rather, it merely alludes to "[d]ifferences in transmit power, packet structure, bandwidth, baud rates, routing, interference avoidance, data format, distances of transmission and reception, or other network characteristics" that "may distinguish the high level network protocol from a lower network protocol," further stating that "[d]ifferent frequencies, codes or other communications differences may be used." *Id.* at 5:30-55; *see id.* at 11:55-61 (higher bandwidths can be used when communicating high bandwidth data, such as video data).

The '495 patent similarly concedes that the claimed "sensors" were known:

> The sensor 30 is a temperature sensor, humidity sensor, fire sensor, smoke sensor, occupancy sensor, air quality sensor, gas sensor, $CO_2$ or CO sensor ***or other now known*** or later developed sensors, such as an oxygen sensor for use in hospitals. Micro-electro-mechanical sensors or larger sensors for sensing any environmental condition may be used.

*Id.* at 6:53-60 (emphasis added).

The recited "building components" likewise encompass generic preexisting devices. For example, the '495 patent states: "[p]eak demand limiting is used to control an overall power usage by a building, such as controlling power used by chillers, boilers, air handlers, lighting, ***or other building components***." *Id.* at 12:56-61 (emphasis added); *see also id.* at 8:16-18, 8:26-28, 12:42-44, 18:30-37 (referring to "building components" generically).

### C. The Court's Decision on Subject Matter Eligibility

The Court "agree[d] with ecobee that claim 1 of the '495 Patent is directed to the abstract idea of 'controlling generic 'components' using information from two separate sources (i.e., information from two separate networks).'" Dkt. 63 at 16.[2] It thus held that claim 1 failed *Alice* step one. The Court further recognized that "[r]ather than specific improvements to wireless building control architecture, . . . the claim recites, at a high level, conventional wireless networks for controlling building components." *Id.*

As to *Alice* step two, the Court found "factual disputes related to whether various elements of claim 1 of the '495 Patent, alone or in combination, were conventional and well-understood at the time the patent was filed." *Id.* at 17. Specifically, the Court identified a dispute as to the conventionality of the claimed "different wireless networks utilizing different wireless communications protocols." *Id.* at 17-18. Thus, *Alice* step two was an issue for the jury to decide.

### D. The Evidence and Erroneous Instructions at Trial

#### 1. ecobee's Expert Substantiated His Opinions that the Non-Abstract Elements of the Claims of the '495 Patent Were Conventional

ecobee's expert (Dr. Martens) squarely addressed the issue flagged by the Court on *Alice* step two by testifying that the non-abstract elements of the asserted claims were conventional. He explained that the '495 patent and multiple prior art references disclose conventional wireless networks utilizing different wireless communications protocols.

*First*, Dr. Martens described how the admissions of the '495 patent above demonstrate that the non-abstract components were conventional. Ex. 1 [Trial Tr.] at 919:12-921:20.

*Second*, Dr. Martens identified well-known examples of two networks utilizing different

---

[2] As the Court noted, Ollnova did not dispute that claim 1 was "representative for purposes of the § 101 analysis." Dkt. 63 at 1-2.

4

communications protocols, including: (1) an in-house WiFi network connected to a modem; and (2) the modem's connection to the internet. *Id.* at 921:25-922:16.

*Third*, Dr. Martens testified that prior art—specifically, U.S. Patent No. 8,984,500 ("Mesarina") and U.S. Patent App. Pub. No. 2003/0151513 ("Herrmann")—discloses at least two networks utilizing different communications protocols. *Id.* at 923:4-18, 925:21-932:19 (explaining that Mesarina's: (1) sensor system "oval 120a with the sensors and actuators in it, along with this transceiver 24"; and (2) "computing node network 110" constitute different wireless networks with different communications protocols), 933:17-939:8 (discussing Herrmann's two networks for relatively low- and high-complexity devices, with "two different radios, radio 1 and radio 2," that have "different communication protocols"); *see also* Ex. 3 [Mesarina] at 2:52-55 ("For example, the sensor networks 120 may include a low-power wireless network that may utilize a wireless protocol different from the computing node network 110."); Ex. 4 [Herrmann] at [0026], [0041], [0042]. Dr. Martens also testified that Mesarina and Herrmann each disclose a first network having a lower bandwidth than a second network, as required by claim 2 of the '495 patent. Ex. 1 [Trial Tr.] at 932:20-933:14, 939:9-16. He thus explained that the non-abstract elements of the asserted claims, individually and as an ordered combination, recite solely conventional technologies.

    **2.    Ollnova's Rebuttal Expert Testimony Improperly Relied on the Abstract Idea Itself**

Ollnova's expert (Dr. Madisetti) purported to rebut Dr. Martens' testimony. However, Dr. Madisetti ***never disputed that different wireless networks utilizing different wireless communications protocols were conventional***. Instead, he testified that the patent's unconventional feature was the exact feature that the Court ***had previously determined to be abstract*** in its analysis of *Alice* step one. Specifically, Dr. Madisetti identified the networks' "control" of generic building components—i.e., the abstract idea—in opining that the claims were

5

unconventional.[3]

> Q. Do you agree with [Doctor Martens that claim 1 of the '495 Patent is conventional]?
> A. No.
> Q. Why not?
> A. The claims date back to 2004, and they provide a novel method to solve a technical problem of *control*, not communications*,* and *control with respect to building automation*. And this is almost 20 years ago. It foresaw how you could carry out this novel two wireless network architecture *to control* building equipment, not just for communications but *for control*. And it provides a novel way with, as Doctor Martens said, two modes, one where both networks work together *to control* and one where the first wireless network is operable *to control* free of communications. So this is a technical solution to a technical problem within building automation *for control*.

*See* Ex. 1 [Trial Tr.] at 1073:23-1074:15 (emphases added); *see also* Ex. 5 [Madisetti Rebuttal Dems.] at PDX4.17 (emphasizing "control" in demonstrative on the allegedly "inventive combination"). Thus, Dr. Madisetti conceded that the different wireless networks with different communications protocols was conventional, and he instead urged the jury to rely on the abstract concept of controlling building components when deciding *Alice* step two.

### 3. The Jury Instructions and Verdict Form Did Not Identify the Abstract Idea or Advise the Jury That Any Unconventional Elements Must Be Distinct from the Abstract Idea

The verdict form and jury instructions compounded these problems. The verdict form asked whether "the limitations of the asserted claims of the '495 Patent, when taken individually or when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional." Dkt. 225 at 5. This question did not mention that the Court already had found that the claims were directed to an abstract idea, much less the abstract idea itself, i.e., "controlling generic 'components' using information from two separate . . . networks." Dkt. 63 at 16. Nor did it inform the jury that any unconventional elements must be found in something other than that abstract idea. And the jury

---

[3] At times, when discussing conventionality, Dr. Madisetti referred to this abstract idea as the "third limitation" of claim 1. *See* Ex. 1 [Trial Tr.] at 1075:17-23.

instructions did not rectify these flaws. Like the verdict form, the jury instructions referred to "the elements" of the claims collectively, without distinguishing abstract and non-abstract elements or confining the jury's step two eligibility inquiry to the non-abstract elements. Ex. 1 [Trial Tr.] at 1241:3-12 ("If the evidence shows by clear and convincing evidence that the elements of the asserted claims, when taken individually or when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

ecobee objected to the jury instructions and verdict form based on these deficiencies. *Id.* at 1204:19-1205:2, 1213:6-13; *see also id*. at 1205:6-1207:5 (tendering an instruction on eligibility that informed the jury of the abstract idea, stated that the "abstract idea cannot supply an inventive concept," and required consideration of "what, if anything, is in the claim beyond the abstract idea itself"). The Court overruled those objections. *Id.* at 1207:6-17, 1213:14-16.

## III. ARGUMENT

### A. Uncontroverted Evidence Established that the Asserted Claims—Without the Abstract Idea—Contain No Inventive Concept and Fail *Alice* Step Two

JMOL should be entered because the '495 patent claims' non-abstract elements ("different wireless networks utilizing different wireless communications protocols") were indisputably conventional, so the claims fail *Alice* step two. Instead, Ollnova improperly attempted to establish unconventionality by invoking the abstract idea itself. *See* Section II.D.2.

For example, the "two modes" of control relied on by Ollnova's expert—"one where both networks work together to control and one where the first wireless network is operable to control free of communications [with the second network]" (Ex. 1 [Trial Tr.] at 1074:10-14)—is the abstract idea itself (i.e., "controlling generic 'components' using information from two separate [networks]"). Control through two modes entails no more than optionally including "data" from

the second network. Because data "as such is an intangible," the inclusion of additional, abstract data does not satisfy step two. *See Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1353-55 (Fed. Cir. 2016) (claims ineligible where the "advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions"); *see BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) (claim that incorporated "historical usage information" failed *Alice* step two because it did not improve underlying database structures, even if conventional approaches did not use that information); *PerkinElmer, Inc. v. Intema Ltd.*, 496 F. App'x 65, 72-73 (Fed. Cir. 2012). The jury thus lacked sufficient evidence to find that the asserted claims—without the abstract idea—do not contain only conventional technology.

Ollnova cannot avoid JMOL by arguing that the claims solved a "problem of control" relating to building "automation." *See* Section II.D.2. Courts have routinely rejected under § 101 claims that set forth improvements in "automation," which is an abstract idea. *See Repifi Vendor Log. v. IntelliCentrics, Inc.*, No. 21-1906, 2022 WL 794981, at *3 (Fed. Cir. Mar. 15, 2022) ("[A]utomation . . . cannot be the inventive concept because such automation is itself an abstract idea."); *Credit Acc. Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043, at *4 (Fed. Cir. Aug. 21, 2023) (petition for certiorari pending). Even assuming the claimed techniques are "groundbreaking, innovative, or even brilliant," they do not satisfy step two because advances in an "abstract realm" like automation cannot provide an inventive concept. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163, 1169-70 (Fed. Cir. 2018).

Nor does the "ordered combination" of elements satisfy *Alice* step two. As an initial matter, Dr. Madisetti did not opine that the ordered combination of claim elements provides an inventive

8

concept. *See* Ex. 1 [Trial Tr.] at 1075:17-23 (relying on just the "third limitation"—the abstract idea). Nor could he. Cobbling together multiple well-known components cannot confer eligibility where, as here, the components operate according to their "expected" capabilities. *See Universal Secure Registry LLC v. Apple Inc.,* 10 F.4th 1342, 1353, 1355 (Fed. Cir. 2021) (claims ineligible where no evidence that "claimed combination of these conventional authentication techniques achieves more than the expected sum of the security provided by each technique"); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (claims ineligible because they "require nothing 'other than conventional computer and network components operating according to their ordinary functions'") (citation omitted). For example, the claims in *ChargePoint, Inc. v. SemaConnect, Inc*. combined charging stations with network technology. 920 F.3d 759, 768 (Fed. Cir. 2019). That combination provided benefits, including the ability to "locate available charging stations remotely" and "transfer power from . . . vehicles to the power grid." *Id*. at 764. "Notably, however, the specification never suggest[ed] that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could." *Id.* at 768. "Nor d[id] the specification suggest that the invention involved overcoming some sort of technical difficulty in adding networking capability to the charging stations." *Id.* The Court found the claims ineligible, as they just "applied" networking technology (transceivers and other components) "to the context of electric vehicle charging stations." *Id*. at 768, 774.

The same reasoning applies here. The '495 patent never suggests that the claimed networks differ in any technical way from conventional networks. To the contrary, it concedes that the technical aspects of their operation mirror preexisting networks. *See* Section II.B. And the '495 patent does not purport to overcome any "technical difficulty" with combining, e.g., known Bluetooth and WiFi networks. *ChargePoint*, 920 F.3d at 768. Nor does it address any technical

9

issues with combining those networks with the undisputedly conventional sensors and building components recited in the claims. So, the claims at most apply conventional network technology "to a particular technological environment," and consequently are ineligible. *Id.* (citation omitted).

The '495 patent's claims reflect even less of a technical improvement than those in *ChargePoint*, where no one had previously "propose[d] networked [electric vehicle] charging infrastructure." *Id.* at 763, 774. Here, in contrast, the prior art had combined wireless networks with different communications protocols. *See* Section II.D.1. Indeed, the '495 patent was not even the first to apply multi-tier wireless networking to control building components; the patent's background section admits that such networks had been used in this context. *See* Section II.B.[4]

### B. The Jury Did Not Decide the Only Relevant Question

JMOL or a new trial is needed because the jury must have decided that the asserted claims' unconventional technology was found in the abstract idea. "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept." *BSG*, 899 F.3d at 1290. Instead, "[i]n applying step two of the *Alice* analysis . . . we evaluate whether the claims disclose '***additional features*** . . . that constitute an inventive concept' and are 'more than well-understood, routine, conventional activity.'" *Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *3 (Fed. Cir. Jan. 9, 2024) (emphasis added) (citation omitted). For example, in *BSG*, the Court held that the claimed use of an abstract idea could not be an inventive

---

[4] Ollnova did not dispute the representativeness of claim 1 or separately argue the eligibility of claim 2. "[Claims that] require performance of the same basic process . . . should rise or fall together." *Smart Sys. Inn., LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017) (citation omitted). Claim 2 merely adds that the first network's bandwidth must be less than the second network's bandwidth. But, the '495 patent concedes that "known" networks had different bandwidths, one necessarily being lower than the other. *See* Ex. 2 ['495 patent] at 5:22-27, 5:30-55 ("[d]ifferences in . . . . bandwidth . . . may distinguish" the networks), 11:55-12:5. The patent does not set forth any technological advance pertaining to low or high bandwidths, or any improvement to wireless building control resulting from different protocols having different bandwidths. JMOL therefore is warranted with respect to claim 2 for the same reasons as claim 1.

concept, even if unconventional. *BSG*, 899 F.3d at 1290-91. Notably, the Court in *BSG* dismissed allegations that the claims' "unconventional features . . . provide benefits over conventional prior art databases," explaining that "the relevant inquiry is *not* whether the claimed invention as a whole is unconventional or non-routine." *Id*. (emphasis added). Instead, "[a]fter identifying an ineligible concept at step one, [Courts] ask at step two '[w]hat else is there in the claims before us?'" *Id.* (finding step two failed because the "limitations *other than the invention's use of the ineligible concept* to which it was directed were" conventional) (emphasis added) (citation omitted).

The jury here did not answer the "relevant inquiry" identified in *BSG* because neither the jury instructions nor the verdict form identified the abstract idea or excluded it from the step two inquiry. To the contrary, the verdict form referred to all "limitations of the asserted claims" collectively, without distinguishing the abstract and non-abstract elements, as required by binding precedent. *BSG*, 899 F.3d at 1290; *see* Dkt. 225 at 5 (asking if "the limitations of the asserted claims of the '495 Patent, when taken individually or when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional"). Accordingly, the jury never considered the only relevant question: whether the *non-abstract* elements were conventional. *See id.* Nor could it have, as the jury was never instructed on the abstract elements or how they cannot supply the unconventional, inventive concept. For this reason alone, JMOL or a new trial is appropriate.

## IV.     CONCLUSION

The Court should grant JMOL of invalidity under 35 U.S.C. § 101 or, in the alternative, order a new trial on whether claims 1 and 2 of the '495 patent, without the abstract idea, involve conventional technology.

11

Dated: March 29, 2024

Respectfully submitted,

By: */s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
TX Bar No. 00784720
WILSON, ROBERTSON &
VANDEVENTER, P.C.
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
(903) 509-5000
Email: jainsworth@wilsonlawfirm.com

Michael P. Sandonato
Manny J. Caixeiro
VENABLE, LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9900
Email: MSandonato@venable.com
MJCaixeiro@venable.com

Megan S. Woodworth
Jason M. Dorsky
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000
Email: MWoodworth@venable.com
JMDorsky@venable.com

*Attorneys for Defendant*
*ecobee Technologies ULC d/b/a Ecobee*

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 29th day of March, 2024, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By: */s/ Jennifer Parker Ainsworth*