IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OLLNOVA TECHNOLOGIES LIMITED, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-CV-00072-JRG |
| § | |
| ECOBEE TECHNOLOGIES ULC d/b/a § | |
| ECOBEE, § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial, Regarding Invalidity Under 35 U.S.C. § 101 of the Asserted Claims of U.S. Patent No. 7,860,495 (the "Motion") filed by Defendant ecobee Technologies ULC d/b/a/ ecobee ("ecobee"). In the Motion, ecobee moves for judgment as a matter of law ("JMOL") on the grounds that no reasonable juror could have found the asserted claims of U.S. Patent No. 7,860,495 (the "'495 Patent") to be not ineligible under 35 U.S.C. § 101. Alternatively, ecobee moves for a new trial. For the following reasons, the Court finds that the Motion should be **DENIED**.

**I.    BACKGROUND**

Plaintiff Ollnova Technologies Limited ("Ollnova") alleged that ecobee infringes claims 1 and 2 of the '495 Patent. On May 10, 2022, ecobee filed a Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss") arguing *inter alia* that the asserted claims of the '495 Patent were invalid as being drawn to patent-ineligible subject matter under 35 U.S.C. § 101. (Dkt. No. 25.) In ruling on the Motion to Dismiss, the Court found that claim 1 of the '495 Patent was directed to an abstract idea. Specifically, the Court found that claim 1 "recites, at a high level, conventional wireless networks for controlling building components," and found that the

claims were directed to the abstract idea of "controlling generic 'components' using information from two separate sources (i.e., information from two separate networks)." (Dkt. No. 63 at 16.) However, the Court found that fact issues with respect to Step Two precluded dismissing the complaint. The Court specifically noted that Ollnova had argued that "[t]he '495 Patent claims a wireless building automation control system comprising two different wireless communication protocols that was not conventional as confirmed by the prosecution history." (*Id.* at 17 (quoting Dkt. No. 38 at 21.)) The Court found that "ecobee [did] not address Ollnova's argument that the claimed 'different wireless networks utilizing different wireless communications protocols' was not conventional." (*Id.* at 17-18.) Accordingly, dismissal was inappropriate.

ecobee later moved for summary judgment that the '495 Patent is ineligible pursuant to § 101. (Dkt. No. 123.) In its motion for summary judgment, ecobee argued that there was no factual dispute that "different wireless networks utilizing different wireless communications protocols" was conventional. (*Id.*) In response, Ollnova argued that the *combination* of elements was not conventional because it addressed "two different <u>wireless</u> networks <u>within</u> a building." (Dkt. No. 148 at 6) (emphasis in original). Ollnova argued that its contentions, supported by Dr. Madisetti's expert report created at least a fact issue that precluded summary judgment. The Court ultimately agreed with Ollnova, finding that fact questions concerning Step Two precluded summary judgment. The Court further commented that "Doctor Madisetti's opinions that the combination of the elements were not well-understood, routine, and conventional is part of why there remain material fact questions that should go to the jury on this issue."[1] (Dkt. No. 212 at 69:5-13.)

---

[1] The parties also re-argued their positions with respect to Step One of the *Alice* analysis. The Court reaffirmed that the new arguments presented at the summary judgment stage did not alter its previous findings concerning *Alice* Step One.

2

After a jury trial, on October 5, 2023, the jury returned a verdict, finding in relevant part that ecobee had not proven by clear and convincing evidence that the limitations of the '495 Patent, when taken individually or when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of April 9, 2024. ecobee now contests the jury verdict, moving for JMOL or a New Trial on the grounds that the '495 Patent is ineligible under § 101.

## II.     LEGAL STANDARD

### A.     Judgment as a Matter of Law

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The non-moving party must identify "substantial evidence" to support its positions. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)). A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig. Div. Inc.*, 442 F.3d 919, 937–38 (5th Cir. 2006).

### B.     New Trial

Rule 59 provides that a new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Notwithstanding the broad sweep of Rule 59, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch Networks Ltd. v. Genband US LLC*, 2017 WL 3704760, at *2 (E.D. Tex. Aug. 28, 2017); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 643 (E.D. Tex. 2017). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence."). Furthermore "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

### III.    DISCUSSION

ecobee argues that the Court should grant JMOL that the '495 Patent is invalid under § 101 because (1) the uncontroverted evidence establishes that the Asserted Claims contain no inventive concept and fail *Alice* Step Two, and (2) the jury did not decide the only relevant question to the Step Two inquiry. The Court addresses each in turn.

### A. Evidence Concerning an Inventive Concept in the Claims of the '495 Patent

ecobee argues that JMOL should be entered because the claim limitations of the '495 Patent were indisputably conventional, and thus they fail *Alice* Step Two. (Dkt. No. 243 at 7.) According to ecobee, Ollnova did not introduce any evidence that the '495 Patent contained an inventive concept because Ollnova only attempted to establish unconventionality by invoking the abstract idea itself. (*Id.*) To support its arguments, ecobee primarily relies on the Court's decision on ecobee's Motion to Dismiss concerning *Alice* Step One. The Court found the following:

> Rather than specific improvements to wireless building control architecture, the Court finds that the claim recites, at a high level, conventional wireless networks for controlling building components. The Court agrees with ecobee that claim 1 of the '495 Patent is directed to the abstract idea of "controlling generic 'components' using information from two separate sources (i.e., information from two separate networks)." (Dkt. No. 25 at 17.)

(Dkt. No. 63 at 16.) Further, ecobee contends that the Court determined that the only factual dispute for *Alice* Step Two was whether "'different wireless networks utilizing different wireless communication protocols' was not conventional." (Dkt. No. 63 at 17.) According to ecobee, the undisputed evidence at trial showed that different wireless networks using different wireless communication protocols was, in fact, conventional. Thus, ecobee argues, there was no basis for the jury to find that the patent contained an inventive concept.

ecobee contends that its own expert, Dr. Martens, squarely addressed the issue flagged by the Court as to Step Two by testifying that the non-abstract elements of the asserted claims were conventional. (Dkt. No. 243 at 4) For example, Dr. Martens purported to identify well-known examples of two networks utilizing different communication protocols such as an in-house WiFi network connected to a modem and a modem's connection to the internet. Trial Tr. at 921:25-922:16. ecobee argues that Dr. Martens explained how the non-abstract elements—*i.e.*, using different wireless networks utilizing different wireless communication protocols—was

5

conventional at the time of the invention of the '495 Patent, and that this testimony was effectively unrebutted.

ecobee argues that Ollnova's expert, Dr. Madisetti, never disputed that different wireless networks with different communications protocols were conventional, but instead testified that the patent's unconventional feature was the abstract idea itself: controlling generic components using information from two networks. (Dkt. No. 243 at 5, 7.) ecobee also contends that Dr. Madisetti never opined that the ordered combination of elements was unconventional, and that even he had, "[c]obbling together multiple well-known components cannot confer eligibility where, as here, the components operate according to their 'expected' capabilities." (*Id.* at 9.) Thus, ecobee argues, the jury lacked sufficient evidence to find that the asserted claims—without the abstract idea—do not contain only conventional technology. (*Id.* at 8.)

In response, Ollnova argues that ecobee recycles arguments that the Court rejected on summary judgment and otherwise summarizes the evidence presented at trial but asks the Court to reach a contrary result from the jury. (Dkt. No. 257 at 6.) According to Ollnova, there was ample evidence presented at trial to support the jury's finding concerning eligibility. Specifically, it notes that Dr. Madisetti opined that the inventive concept of the '495 Patent was implementing two wireless networks in a building's automation system, wherein the first network was "free of communication" from the second network, so that if one system failed, control was not lost over the building's systems. (*Id*. at 7); Trial Tr. at 268:18-24. For example, Dr. Madisetti explained that if there is a "communication failure in WiFi" (one network), the other network ensures that "you don't lose control over your HVAC [] and your equipment." *Id.* at 269:20 – 270:3. Ollnova notes that Dr. Madisetti explained that the use of two wireless networks—specifically for building automation—was inventive because it solved an important technical problem pertaining to the

6

control of building components, rather than merely solving problems pertaining to communications (the conventional use of multiple networks). Trial Tr. at 1074:3-15. In other words, according to Dr. Madisetti, the '495 Patent claims a technological improvement to how the technology (wireless building architecture) operates. (Dkt. No. 257 at 8 (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1302 (Fed. Cir. 2016)).

Ollnova also argues that none of ecobee's prior art references rendered the '495 Patent obvious because they did not teach that the first wireless network was "free of communications" with the second wireless network. Trial Tr. at 1067:20–1073:22; 1128:2–1135:18; 1151:12–21; 1151:22–1152:24. According to Ollnova and its expert, ecobee's asserted prior art for the '495 Patent lacked key aspects of the claims, which supported Dr. Madisetti's opinion that the ordered combination of the '495 Patent was not well-understood, routine, and/or conventional. The jury found that ecobee had not proven the '495 Patent to be obvious, which, according to ecobee, was consistent with the jury's eligibility findings.

Finally, Ollnova asserts that "[t]here was never a dispute that the existence of two wireless networks using different communications protocols was generally known at the time." (Dkt. No. 257 at 9.) Rather, Ollnoval argues that "the '495 Patent teaches, and Dr. Madisetti explained, that the inventive concept is rooted in the use of two different wireless networks <u>within the same building automation system</u> such that one network is operable to control building components free of communications with the second wireless network." (*Id.* at 9-10 (emphasis in original).)

In reply, ecobee argues that the Court specifically identified a single factual dispute for the jury to resolve at Step Two: whether the claimed "different wireless networks utilizing different wireless communications protocols" were conventional. (Dkt. No. 266 at 1 (citing Dkt. No. 63 at 17-18.)) Ollnova's concession that "[t]here was never a dispute that the existence of two wireless

7

networks using different communications protocols was generally known at the time" is—in ecobee's mind—sufficient for the Court to find the '495 Patent ineligible as a matter of law. (Dkt. No. 266 at 1; *see* Dkt. No. 257 at 9.)

ecobee further argues that Ollnova pointed to an alleged inventive concept in the third limitation of claim 1, but that the third limitation is essentially the abstract idea itself. Specifically, Ollnova, at trial, identified "two different <u>wireless networks within the same building</u> such that *one network is operable to control building components free of communications with the second wireless network*," as the inventive concept.[2] ecobee, however, argues that the italicized portion is the abstract idea that the Court identified at Step One, and that nothing remaining in this third limitation provides an inventive concept. (Dkt. No. 266 at 3.) ecobee further notes that, although the Court's original Step One analysis did not consider the "free of communications" limitation, at the pretrial conference the Court reaffirmed its prior ruling on Step One "noting that consideration of the . . . 'free of communications' limitation, which was not previously argued, does not somehow disturb the Court's prior conclusion." (Dkt. No. 212 at 69:14-22.)

ecobee also argues that "local control" cannot supply the inventive concept because there are no geographic or distance (i.e., local vs. non-local) limitations in the claims, and that the existence of the networks in the context of building automation cannot be inventive because "limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." (Dkt. No. 266 at 3 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016))). Finally, ecobee contends that "building" automation is only mentioned in the preamble, which is not automatically limiting. (*Id.*)

---

[2] The underlined portion is emphasis by Ollnova in Dkt. No. 257 at 10. The italics are ecobee's emphasis in Dkt. No. 266 at 2-3.

8

In sur-reply, Ollnova argues that ecobee selectively picks quotes from prior Court orders to stretch their meaning and ignores the evidence presented to the jury concerning the unconventionality of the '495 Patent. (Dkt. No. 271 at 1.) Specifically, Ollnova disagrees that the Court identified the conventionality of "different wireless networks utilizing different wireless communications protocols" as the sole fact issue to be decided by the jury at Step Two. (*Id.*) Ollnova argues that ecobee, by selectively quoting the Court's Order on the Motion to Dismiss, ignores the Court's findings in ruling on the motion for summary judgment "[t]here are factual disputes related to whether various elements of claim 1 of the '495 Patent, alone or in combination, were conventional and well understood at the time the patent was filed." (*Id.* (quoting Dkt. No. 63 at 17.)) Specifically, when the Court denied ecobee's motion for summary judgment, the Court explained that "Doctor Madisetti's opinions that the combination of the elements were not well-understood, routine, and conventional is part of why there remain material fact questions that should go to the jury on this issue." (*Id.* (quoting (Dkt. No. 212 at 69:5-13.))

Finally, Ollnova disagrees that the only mention of the "building" is in the preamble. Ollnova notes that the claim requires "a first wireless network in a *building*" and "a second wireless network in a *building*." (Dkt. No. 271 at 2.) Further, the claims require that the first network be "operable to control, free of communications with the second wireless network, *building* components in response to sensors operable within the first wireless network." Accordingly, Ollnova argues that it developed sufficient facts at trial for the jury to conclude that the claims recite an inventive concept beyond the Court's identified abstract idea.

The Court agrees with Ollnova. ecobee's reliance on selected quotes from the Court's Order on ecobee's Motion to Dismiss, to the exclusion of other rulings and instructions both within that Order and without, leads ecobee to incorrectly conclude that the Court limited the Step Two

9

inquiry to a single factual dispute. The Court denied the Motion to Dismiss because ecobee "[did] not address Ollnova's argument that the claimed 'different wireless networks utilizing different wireless communications protocols' was not conventional." (Dkt. No. 63 at 17.) The Court did not—at the motion to dismiss stage—limit all future Step Two issues to that single, exemplary fact issue. When the Court denied ecobee's motion for summary judgment as to the same issue, the Court explained that "Doctor Madisetti's opinions that the combination of elements were not well-understood, routine, and conventional is part of why there remain material fact questions that should go to the jury on this issue." (Dkt. No. 212 at 69:5-13.) ecobee ignores this ruling.

Second, even assuming Step Two is limited to the single fact issue identified by Ollnova at the motion to dismiss stage, ecobee still takes a narrower view of that dispute by limiting the question to whether the use of two wireless networks was conventional *generally*, rather than whether such was conventional *in building automation*. ecobee argues that JMOL is appropriate based solely on Ollnova's concession in the briefing that "[t]here was never a dispute that the existence of two wireless networks using different communications protocols was generally known at the time." (Dkt. No. 257 at 9.) However, Ollnova is correct. Reading ecobee's selective quotes in their proper context, there never was a dispute concerning the use of two wireless networks *generally*. In response to ecobee's Motion to Dismiss, Ollnova argued that there was a factual dispute over whether "*a wireless building automation control system* comprising two different wireless communication protocols . . . was not conventional." (Dkt. No. 63 at 17 (quoting Dkt. No. 38 at 21.)) The Court specifically quoted this argument and agreed that such a factual dispute precluded dismissal. ecobee, however, ignores this portion of the Court's Order, choosing instead a quote from a few sentences later in the Order that, devoid of context, better suits its arguments. Viewing ecobee's selective quotes in context, it is clear that Ollnova never argued that different

10

networks using different protocols was unconventional generally, and the Court never limited the Step Two analysis to an inquiry of whether such was unconventional generally or as applied to anything but building automation.

Third, ecobee incorrectly argues that there is nothing in the third limitation of claim 1 except the abstract idea itself. The third limitation recites:

> [3] wherein the first wireless network is operable to control, free of communications with the second wireless network, building components in response to sensors operable within the first wireless network, and wherein the first wireless network is also operable to control the building components in response to data from the second wireless network.

'495 Patent claim 1. While ecobee argues that this third limitation is the abstract idea itself, or that it recites no more than the abstract idea, the Court has never made such a finding. The Court found that the patent was directed to the abstract idea of "controlling generic 'components' using information from two separate sources." (Dkt. No. 63 at 16.) Nowhere in the Court's identification of the abstract idea is there any mention of "building automation," or the requirement that the first network must be "free of communications" with the second network, both of which are present in this limitation. Further, the "free of communications" requirement undermines ecobee's argument that this is an attempt to "circumvent" the prohibition on patenting abstract ideas "by attempting to limit the use of [the idea] to a particular technological environment." *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) The ordered combination of elements requires more than merely implementing two networks in the technological field of building automation. It requires that they be free of communication with one another, which according to the evidence presented to the jury, purportedly solves technical problems pertaining to control of a building's wireless architecture in an unconventional way. ecobee focuses only on the presence of using two different wireless networks with different wireless communications protocols in this limitation,

but it fails to account for the other features of this limitation, the other elements in claim 1, and their ordered combination.

There was ample evidence presented at trial for the jury to conclude that claim 1 of the '495 Patent contained an inventive concept, or at the very least, that ecobee failed to meet its clear and convincing burden to show that there was not an inventive concept. Dr. Madisetti opined that conventional building automation systems at the time of the invention utilized a single wireless network. Trial Tr. at 267:2–270:3. He explained that the patent's inventive concept was the application of multiple wireless networks that were free of communication from each other, not to resolve communications issues, but for more reliant control of a building's automation systems. Trial Tr. at 1074:3-15.

Further, Dr. Madisetti opined that although ecobee had identified prior art references showing the use of multiple networks in operating building control, none of them included a first wireless network that was operable to control the building components "free of communications" with the second wireless network. Trial Tr. at 1067:20–1073:22; 1128:2–1135:18; 1151:12–21; 1151:22–1152:24. Finally, Dr. Madisetti explained to the jury that the failure of the prior art references to teach this limitation was consistent with the fact that this limitation was not conventional at the time of the patent. The jury was entitled to consider and agree with Dr. Madisetti's opinions. Ultimately, the jury's findings concerning eligibility and obviousness of the '495 Patent were in fact consistent with his opinions. The jury found that the '495 Patent was not anticipated or rendered obvious by ecobee's identified prior art and that the limitations of the '495 Patent, alone or in combination, recited more than conventional, well-understood, and routine elements.

In sum, there was sufficient evidence presented at trial upon which a reasonable juror could have concluded that the invention of the '495 Patent claimed an inventive concept beyond the abstract idea of "controlling generic 'components' using information from two separate sources." Accordingly, JMOL is inappropriate.

Further, ecobee makes no argument that the jury's finding was against the great weight of the evidence, and altogether fails to even articulate the appropriate legal standard for a new trial. Accordingly, ecobee has failed to meet its burden in moving for a new trial.

### B.     The Jury Instructions and Verdict Form

ecobee argues that JMOL or a new trial is warranted because the jury "must have decided that the asserted claims' unconventional technology was found in the abstract idea." (Dkt. No. 243 at 10.) Specifically, ecobee argues that the Court failed to instruct the jury on what the abstract idea was in both the jury instructions and the verdict form. ecobee relies on *BSG Tech LLC v. Buyseasons, Inc.*, in which the Federal Circuit explained that "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept." 899 F.3d 1281, 1290 (Fed. Cir. 2018). The Federal Circuit further explained that the "relevant inquiry is ***not*** whether the claimed invention as a whole is unconventional or non-routine." *Id.* ecobee argues that the Court's instructions to the jury should have informed it what the abstract idea was, and the lack of such an instruction means that the jury did not answer the "relevant inquiry" identified in *BSG Tech*.

In response, Ollnova disagrees that the jury "must have decided that the asserted claims' unconventional technology was found in the abstract idea" for the same reasons articulated in its opposition to ecobee's first argument. Specifically, Ollnova maintains that there was sufficient evidence for the jury to find that the inventive concept of the '495 Patent was the implementation

of two wireless networks free of communications from each other for the purposes of building automation, which is not the abstract idea identified by the Court.

According to Ollnova, ecobee also fails to demonstrate how express inclusion of the abstract idea could have had any bearing on the jury's Step Two determination. Ollnova argues that the Court properly delineated the jury's role as to *Alice* Step Two in its jury instructions:

> To succeed on its claims for patent ineligibility, ecobee must establish two things. The first is whether the claims are directed to an abstract idea. That issue is one for the Court to decide and not the jury. It is not something you will have to decide in this case.
>
> However, you, the jury, will decide the second question related to patent eligibility. Specifically, and in that regard, ecobee must show that the claims involve nothing more than the performance of activities which a person of ordinary skill in the art would have considered well-understood, routine, and conventional at the time the patent application was filed. You, the jury, will determine this issue.
>
> To meet its burden on this issue, ecobee must show by clear and convincing evidence that the asserted claims of the '495 patent involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of April the 9th, 2004. The mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine, and conventional. Rather, the test is whether, in view of all the evidence, a person of ordinary skill in the art would have considered the claim to involve only technology that was well-understood, routine, and conventional as of April the 9th, 2004.
>
> You should consider all the evidence presented during this trial, including the testimony of the witnesses as well as the exhibits introduced, including the specifications within the patents-in-suit. If the evidence shows by clear and convincing evidence that the elements of the asserted claims, when taken individually or when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional, then this element of patent ineligibility has been established.

Trial Tr. at 1240:4-1241:12. Ollnova contends that an inventive concept may arise in one or more claim limitations or in the ordered combination of the limitations, and that an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional piece.

14

(*Id.* (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016))). Accordingly, the jury was entitled to consider every claim limitation, individually and their ordered combination. Ollnova argues that ecobee does not explain how the Court could have done this and still allowed the jury to consider every claim limitation while also "distinguishing the abstract and non-abstract elements," and excluding the abstract elements from the analysis. (*Id.*)

The Court agrees with Ollnova. While ecobee complains that the verdict form did not separate the claim into "abstract and non-abstract elements," the Court never determined that there were "abstract elements and non-abstract elements" at *Alice* Step One. Indeed, such would be contrary to the law. At Step One, the Court assesses the claims *as a whole* to determine whether the claims are directed to an abstract idea. *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). Accordingly, the Court determined at Step One that the invention, *as a whole*, was directed to an abstract idea, not that some elements were abstract and others were not. As explained above, ecobee misinterprets the Court's prior rulings to conclude that the third limitation is the abstract idea itself. Accordingly, ecobee would have the Court instruct the jury in such a way that would have prevented Ollnova from arguing that the inventive concept was found in the third limitation. However, ecobee does not explain how the Court could "distinguish[] the [alleged] abstract and non-abstract elements" without taking a knife to the claims, allowing the jury to assess some limitations and not others. Step Two requires a search for an inventive concept in all elements of the claim, individually and as an ordered combination.

Second, the Court disagrees with ecobee's interpretation of *BSG Tech*. While it is true that the "application of an abstract idea ***using only conventional and well-understood techniques***" cannot supply an inventive concept, this does not mean that the Court should divide the claim into

15

"abstract" and "non-abstract" elements and excise the non-abstract elements from the jury's consideration of the subsidiary questions of fact under *Alice* Step Two. "[A]n application of an [abstract idea] may well be deserving of patent protection." *Diehr*, 450 U.S. at 187. Indeed, that is the entire Step Two inquiry: "to determine whether the claim, as a whole ***with all of its limitations***, in effect covers a patent ineligible abstract idea or a patent eligible application of that idea." *Alice*, 717 F.3d at 1298. The Court is not persuaded that dissection of the claims into "abstract and non-abstract limitations" and removal of the "abstract" from the jury's consideration was intended by the Federal Circuit in *BSG Tech*.

Third, even if the Court did agree with ecobee's interpretation of *BSG Tech*, ecobee fails to explain why the jury "must have" decided that the asserted claims' unconventional technology was the abstract idea itself when there was no evidence presented at trial that the inventive concept was "controlling generic 'components' using information from two separate sources." Dr. Martens opined that there was no inventive concept at all, and Dr. Madisetti opined that the inventive concept was the implementation of two wireless networks that were free of communication for the purposes of building automation control, not simply communication. The Court instructed the jury to consider all of the evidence presented—including Dr. Madisetti's testimony—to determine whether the invention involves only well-understood, routine, and conventional elements. It is therefore unclear how the jury would have found the inventive concept to be the abstract idea itself when such was never presented to the jury.

As with ecobee's previous argument, ecobee does not rely on the evidence presented at trial, or lack thereof, but on its misunderstanding of the Court's Step One determination at the motion to dismiss stage. The Court determined that the abstract idea was "controlling generic 'components' using information from two separate sources." Dr. Madisetti, on the other hand,

16

opined that the inventive concept was a building automation system with "two modes" of control, "one where both networks work together to control and one where the first wireless network is operable to control free of communications [with the second network]." Trial Tr. at 1074:10-14. With the correct understanding of what the Court found to be the abstract idea, it becomes clear that no one presented evidence to the jury that the abstract idea itself supplied the inventive concept. Accordingly, ecobee is incorrect that the jury "must have" determined that the "asserted claims' unconventional technology was found in the abstract idea. (*See* Dkt. No. 243 at 10.)

The Court finds that JMOL is inappropriate. Further, ecobee has not shown that the jury's verdict was against the great weight of the evidence, and thus new trial is likewise inappropriate.

### IV. CONCLUSION

For the reasons stated herein, the Court finds that ecobee's Motion should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 5th day of September, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE